partial refund to him, to apply on the forty-nine-thousand dollars ($49,000.), which he advanced as a capital contribution to the funds of this bank in September, 1917, to help the bank cover a large depreciation in Russian Rubles Account, which transaction is mentioned in paragraph 3, of the Minutes of Directors' Meetings, as of October 30, 1917; and it is also ordered that the said Twenty Five Thousand Dollars ($25,000.00) shall be charged to the reserve for Contingencies Account.

5. On March 17, 1922, the payment of the $24,000 balance was likewise ordered by the following resolution:

By the unanimous approval of all the five Directors present at this meeting, it was resolved and ordered that the sum of Twenty-Four Thousand and no/100 Dollars ($24,000.00) be paid to Mr. Benjamin J. Schiff, within thirty days from date, as a refund to him, to apply on the balance of the Forty Nine Thousand and no/100 Dollars ($49,000.00), which he advanced as a capital contribution to the funds of this bank in September 1917, to help the bank cover a large depreciation in Russian Ruble Account. This transaction is mentioned in paragraph 3 of the Minutes of the Director's meeting, as of October 30, 1917.

6. The bank's earnings, accumulated since 1917 and on hand at the time payments were made to the taxpayer in 1921 and 1922, were more than sufficient to meet the total payment of $49,000.

7. During 1917, the bank's stockholders, in addition to the taxpayer, were five in number, who held 140 shares out of 2,000 shares outstanding. In 1921 and 1922, there were six stockholders, in addition to the taxpayer, and their holdings were 240 shares out of 2,000 shares.

8. At the time the payments were made to the taxpayer during 1921 and 1922, no dividends or other payments were made to any of the other stockholders of the bank.

### DECISION.

The deficiency determined by the Commissioner is disallowed.

---

## Appeal of CALIFORNIA POULTRY CO.

Docket No. 112.    Submitted June 30, 1925.    Decided February 9, 1926.

*Hayes Hall*, C. P. A., for the taxpayer.
A. *Calder Mackay*, Esq., for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

This is an appeal from the determination of a deficiency in income and profits taxes for 1918 and 1919 in the amount of $5,332.84. The deficiency arises from certain adjustments made by the Commissioner, increasing the taxpayer's net income for those years, to which adjustments the taxpayer takes no exception, and from the exclusion from the taxpayer's invested capital of certain amounts, which it

claims to be the actual cash value of good will alleged to have been acquired from the Miller & Campagno Co. and the Bianchi Poultry & Produce Co. for stock.

FINDINGS OF FACT.

The taxpayer is a corporation, organized under the laws of the State of California in the year 1905, with a capital stock of $50,000, divided into 1,000 shares of the par value of $50 each, and it is, and has been since its organization, engaged in wholesale and retail trading in live and dressed poultry. The principal office of the corporation is at San Francisco.

On October 5, 1910, the General Supply Co., a corporation, acquired 997 shares of the taxpayer's capital stock, and on the same day it also acquired 495 shares, of the total of 500 shares, of the capital stock of the Miller & Compagno Co. On October 6, 1910, the General Supply Co. acquired 495 shares, of the total of 500 shares, of the capital stock of the Bianchi Poultry & Produce Co. The Miller & Compagno Co. and the Bianchi Poultry & Produce Co. were California corporations, and they were engaged in the same business as the taxpayer.

On December 20, 1916, the capital stock of the taxpayer was increased to $250,000, divided into 5,000 shares of the par value of $50 each.

By a resolution of the board of directors of the taxpayer, duly adopted on February 27, 1917, the secretary of the corporation was authorized and directed to offer the 4,000 shares of the then unissued stock of the taxpayer to the General Supply Co., in exchange for the 495 shares of the capital stock of the Miller & Compagno Co. and the 495 shares of the capital stock of the Bianchi Poultry & Produce Co., then held by the General Supply Co. The offer was made to and was accepted by the General Supply Co., and the exchange of stock was effected on the same day that the resolution authorizing the offe · was adopted, to wit, February 27, 1917, the taxpayer receiving 495 shares of the capital stock of the Miller & Compagno Co. and 495 shares of the capital stock of the Bianchi Poultry & Produce Co., and issuing therefor 3,998 shares of its own stock to the General Supply Co. On the same day, the taxpayer reissued to the General Supply Co., by a new certificate, the 997 shares of the taxpayer's capital stock, which had originally been issued to the General Supply Co. on October 5, 1910. As the result of the exchange of stock made on February 27, 1917, the taxpayer became the owner and holder of all but five shares of the capital stock of the Miller & Compagno Co., and all but five shares of the capital stock of the Bianchi Poultry & Produce Co., and the General Supply

Co. became the owner and holder of all but five shares of the capital stock of the taxpayer. The remaining shares of the capital stock of the Miller & Compagno Co. and the Bianchi Poultry & Produce Co., were held by the directors thereof as qualifying shares.

Soon after it acquired the capital stock of the Miller & Compagno Co. and the Bianchi Poultry & Produce Co. the taxpayer took up the assets of those companies on its own books, as if it had actually acquired the assets instead of the capital stock. However, no formal transfer of the assets of the two companies was ever made by them to the taxpayer, nor has either of the two corporations ever been formally dissolved. The Miller & Compagno Co. forfeited its charter on March 3, 1917, on account of its failure to pay license and franchise tax, and its charter has never been reinstated and all its assets have actually been taken over by the taxpayer and used by it. The Bianchi Poultry & Produce Co. is still in existence and, it appears from the record, still holds title to certain real estate, which it owned on February 27, 1917. For several years prior to February 27, 1917, the taxpayer and the Bianchi Poultry & Produce Co. had occupied the same building, the principal operations of both companies were recorded on the books of the Bianchi Poultry & Produce Co. and the profits of both companies during that period were closed into the surplus account of the latter company. Subsequent to the acquisition of the stock of the Miller & Campagno Co. and the Bianchi Poultry & Produce Co. by the taxpayer in the year 1917, the business theretofore carried on by the three companies was conducted as a single business, under the corporate name of the taxpayer. The taxpayer filed income and profits-tax returns for the years 1918 and 1919, from which it appears that it treated the Miller & Campagno Co. as having been dissolved and its assets taken over by the taxpayer, but that it recognized that the Bianchi Poultry & Produce Co. was still in existence, and, as a subsidiary of the taxpayer, a consolidated return for the two companies was filed.

The General Supply Co., which never had any assets, except the stock of its subsidiaries, forfeited its charter on March 3, 1917. By a resolution adopted on May 15, 1917, the taxpayer agreed to assume the debts and obligations of the General Supply Co., in consideration of the return to it by the General Supply Co. of 374 shares of its own stock. This was carried into effect, and 374 shares of the taxpayer's stock were returned to it, leaving its outstanding capital stock at $231,300. The remainder of the taxpayer's stock held by the General Supply Co. was divided among the stockholders of the General Supply Co., in proportion to their holdings in that company.

On February 27, 1917, the Miller & Campagno Co. owned tangible assets of the value of $30,316.42 in excess of liabilities, and the Bianchi Poultry & Produce Co. owned tangible assets of the value

of $87,811.77 in excess of liabilities. The average net profits of the Miller & Campagno Co. for the 6¼ years ended December 31, 1916, were $3,307.55, and the average value of the tangible assets in excess of liabilities of the company for that period was $18,604.64. The average net profits of the Bianchi Poultry & Produce Co. for the 6¼ years ended December 31, 1916, were $12,878.48, and the average value of the company's tangible assets in excess of liabilities for that period was $57,527.69.

The taxpayer filed original and amended income and profits-tax returns for the years 1918 and 1919. In its amended return for the year 1918, it reported its consolidated invested capital as $211,627.94. In its amended return for the year 1919, it reported its consolidated invested capital as $231,432.35. In each year the amount included in invested capital, on account of good will alleged to have been purchased from the Miller & Compagno Co. and the Bianchi Poultry & Produce Co., was about $55,000. The Commissioner eliminated from the taxpayer's invested capital, for the years 1918 and 1919, the amounts claimed on account of good will alleged to have been purchased, and, after making certain minor adjustments, determined the taxpayer's invested capital to be $156,326.63 for the year 1918, and $178,164.76 for the year 1919.

DECISION.

The determination of the Commissioner is approved.

APPEAL OF KENTUCKY RIVER COAL CORPORATION.

Docket No. 2008. Submitted April 30, 1925. Decided February 9, 1926.

> During the taxable year 1919 the taxpayer had outstanding debenture stock, preferred stock, and common stock. During the year "dividends" were paid upon the debenture stock. *Held*, upon the evidence, that the shares of debenture stock outstanding were not obligations of the taxpayer for money borrowed, and that the taxpayer was not entitled to deduct from gross income for the year 1919 the dividends paid upon the debenture stock, or an amount for amortized discount upon such stock.

*Elwood Hamilton, Esq.*, for the taxpayer.
*Ellis W. Manning, Esq.*, for the Commissioner.

Before SMITH, LITTLETON, and GREEN.

This is an appeal from the determination of a deficiency in income and profits tax for the calendar year 1919 in the amount of $716.64. The questions presented by the appeal are whether the taxpayer is entitled to deduct from gross income (1) dividends paid upon debenture stock during the year 1919, and (2) an amount representing the amortized discount upon such stock allocable to the year 1919.